The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At all relevant times to this claim, the parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all times relevant to this claim, an employment relationship existed between plaintiff-employee and the defendant-employer.
3. A Form 21 was executed by the parties and approved by the North Carolina Industrial Commission on November 14, 1991.
4. Plaintiff's average weekly wage is $265.20, resulting in a compensation rate of $176.80, which has been previously approved by the Industrial Commission.
5. The deposition transcripts of Dr. Thomas Gualtieri, Dr. Dale M. Simpson, Sabrena Bagby, Marge Myers, R.N., and Tamara Hite are admitted into evidence.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 34 years old and a high school graduate. Her work history consists primarily of jobs as a sewing machine operator.
2. Plaintiff began her employment with defendant-employer in 1989 as a sewing machine operator. Prior to her work with defendant-employer, she did not have a history of any upper extremity problems or any psychiatric problems.
3. Plaintiff developed an occupational disease of the right upper extremity. The defendant-employer accepted the claim as a compensable workers' compensation claim. Plaintiff was removed from work and returned briefly to light duty work, but due to her condition was removed from work again. Plaintiff received and continues to receive temporary total disability benefits. She also underwent three compensable surgeries to her upper extremity over a span of several years. Plaintiff has received compensable medical treatment for her upper extremity and related symptoms from a number of doctors, including Dr. Gaul and Dr. Solomon. Plaintiff, at this point, has a twenty percent permanent partial impairment of her right upper extremity. Because defendant-employer has no work for plaintiff within her restrictions, she has continued to receive temporary total disability compensation from the defendants.
4. Beginning January 4, 1994, the defendants hired Tamara Hite for the purpose of providing vocational rehabilitation and counseling to plaintiff. Hite, a vocational counselor, scheduled at least 100 job prospects for plaintiff but either no business would hire plaintiff or plaintiff was not qualified for said jobs. Eventually, the defendants advised Hite to close the file because there was no successful job placement.
5. Subsequently, defendants hired another vocational rehabilitation counselor, Sabrena Bagby, to assist the plaintiff. Bagby recommended that plaintiff go to the McLaurin Center, which was a sheltered workshop. Plaintiff wanted her mother to attend sessions at the McLaurin Center with her and plaintiff often cried when she was there.
6. Plaintiff began to experience depression and was treated for this depression by Dr. Dale Simpson, a psychiatrist at the Sandhills Mental Health Center. Plaintiff exhibited suicidal tendencies to Dr. Simpson and Dr. Simpson recommended that plaintiff not have to attend the McLaurin Center.
7. The defendants denied liability for plaintiff's depressive disorder. Meanwhile, plaintiff continued to receive treatment from Dr. Dale Simpson, a psychopharmacologist with specialties in psychiatric illnesses, psychotherapy and diagnostic evaluation, who was of the opinion that the plaintiff had a major depressive disorder. Dr. Simpson firmly opined that plaintiff's illness was directly attributable to the original, compensable injury to the right upper extremity, the subsequent limitations to that arm, and related events to that injury. Dr. Simpson felt it necessary to remove plaintiff from her required attendance at the McLaurin Center. The doctor stated that plaintiff had hallucinations of cutting off her right, injured arm, and her frequent thoughts of suicide were caused or exacerbated by her forced attendance at the McLaurin Center and would likely lead to self-harm on her part.
8. When Dr. Simpson removed plaintiff from attendance at McLaurin Center, the defendants disputed plaintiff's condition, its cause and its extent. Thereupon, the defendants referred plaintiff to Dr. Thomas Gualtieri in Chapel Hill. Dr. Gualtieri examined plaintiff twice. Dr. Gualtieri gave plaintiff several tests which, among other things, verified diminished strength in the right upper extremity of plaintiff's arm and poor coordination. He confirmed that plaintiff's speech was halting and slow. Dr. Gualtieri, after his second examination, considered plaintiff's problems as exaggerated.
9. Although Dr. Simpson and Dr. Gualtieri are well-known professionally and are extremely competent doctors, their opinions on whether or not plaintiff should attend the McLaurin Center and whether or not her depression is directly related to her admitted compensable occupational injury are in direct conflict. The undersigned gives more weight to the testimony of Dr. Simpson, who is plaintiff's treating physician.
10. The undersigned, however, does agree with a portion of Dr. Gualtieri's opinion in that plaintiff's mental disorder should not impair her ability to work full time and that there is no reason, from a neuropsychiatric standpoint, that plaintiff cannot participate in reasonable vocational rehabilitation activities.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff experienced an admitted injury by accident or occupational disease and has received medical benefits as well as continuing temporary total disability compensation as a result of said injury. N.C.G.S. § 97-2(6) and N.C.G.S. § 97-53(13).
2. As a result of plaintiff's admitted compensable injury by accident, she has contracted a depressive disorder which is the direct and natural result of her original injury. N.C.G.S. § 97-2(6).
3. Plaintiff's treatment by Dr. Simpson is reasonably required to effect a cure, give relief, and will tend to lessen plaintiff's period of disability and plaintiff is entitled to have the defendants pay for the same. N.C.G.S. § 97-25.
4. Plaintiff has failed to prove by the greater weight of the credible evidence that she has sustained a total and permanent disability as a result of her admitted compensable injury and resulting mental disorder. N.C.G.S. § 97-29.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. The defendants shall continue to pay to plaintiff temporary total disability compensation benefits until plaintiff begins employment or until further order of the North Carolina Industrial Commission. Plaintiff's attorney, because the defendants had moved to terminate plaintiff's temporary total disability benefits, alleging plaintiff's uncooperative interaction with her rehabilitation treatment at the McLaurin Center, shall receive every fourth temporary total disability benefit compensation check henceforth due to plaintiff as an approved attorney fee by the North Carolina Industrial Commission.
2. The defendants shall pay for all plaintiff's psychological treatment with Dr. Simpson for so long as such treatment is reasonably required to effect a cure, give relief, and tends to lessen plaintiff's period of disability.
3. The plaintiff shall continue to cooperate with all reasonable requests by the defendants regarding vocational rehabilitation. However, plaintiff is not required to continue attending the McLaurin Center in compliance with this order.
4. Since the plaintiff is still temporarily totally disabled, the question of what permanent partial disability impairment is to be determined regarding plaintiff's right arm is not an appropriate issue to be determined at this time.
5. Defendants shall pay the costs of this action.
This the ___ day of October, 1997.
 S/ ____________________ THERESA B. STEPHENSON DEPUTY COMMISSIONER
CONCURRING:
S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER
S/ _____________________ LAURA K. MAVRETIC COMMISSIONER
TBS/bjp